WOODWARD et al. v. BOSTON LASTING MACH. CO.[1]

(Circuit Court of Appeals, First Circuit. March 5, 1894.)

No. 61.

1. PATENTS—INFRINGEMENT—ESTOPPEL OF ASSIGNOR.
The assignment of a patent by the patentee estops him, when sued for infringement thereof by the assignee, from denying patentable invention.

2. SAME.
The fact that certain persons construct, use experimentally, and offer for sale, machines designed by an inventor who has previously assigned a patent for machines to do the same work, raises a presumption of privity between him and them, sufficient to render applicable to them the same estoppel which prevents him from denying patentable invention in the assigned patent.

3. SAME—DIFFERENCES IN CONSTRUCTIONAL DETAILS.
Differences in constructional details, constituting a possible improvement on the invention of the patent, do not avoid infringement, when all the essential elements of the best form of that invention are retained.

4. SAME—LASTING MACHINES.
The Woodward patent, No. 248,544, for a lasting and tacking machine, *held* to have been infringed by defendants. 53 Fed. 481, affirmed.

Appeal from the Circuit Court of the United States for the District of Massachusetts.

This was a suit in equity by the Boston Lasting Machine Company against Erastus Woodward, James Barrett, and Thomas Barrett, for infringement of the Woodward patent, No. 248,544, for a lasting and tacking machine. The court below adjudged infringement of the second, third, and fourth claims of the patent, but declared the first and fifth claims to be void. 53 Fed. 481. From this decree the defendants appeal.

George O. G. Coale, for appellants.

James E. Maynadier, for appellee.

Before COLT and PUTNAM, Circuit Judges, and NELSON, District Judge.

COLT, Circuit Judge. This suit was brought against Erastus Woodward and others for infringement of a patent (No. 248,544) granted to said Woodward October 18, 1881, and duly assigned to the plaintiff, the Boston Lasting Machine Company. The invention is for a tacking machine which will drive only one nail, and then stop, and which is actuated by the pressure of a jack. The machine covers the combination of three elements: (1) Fastening-driving mechanism; (2) start and stop motions, whereby the machine is automatically started and stopped after one tack is driven; and (3) a jack for presenting the work to be operated upon to the nozzle

[1] Rehearing pending.

of the tacker, and provided with contrivances adapted to press the work against the nozzle,—these 'parts being so organized that the act of placing the work in proper position for receiving the fastening by means of the jack starts the driver, drives the fastening, and stops the machine.    The specification says:

"The act of placing the work in proper position for receiving the fastening starts the fastening-driving mechanism, drives the fastening, and stops the mechanism; and, as the work is presented to the nozzle of the fastening-driving machine by means of a foot treadle, it will also be observed that the act of depressing the treadle not only places the work in proper position to receive the fastening, but also causes the fastening-driving machine to be actuated."

The defenses relied upon are the invalidity of the patent, and noninfringement.

As to the first defense, it is contended that the patent is void for want of patentable novelty, in view of the state of the art at the time, and especially by reason of a prior patent granted to said Woodward August 30, 1881, or about three weeks before the date of his application for the patent in suit.    In this prior patent, it is said, Woodward describes the real improvement which he made over tacking machines which then existed, such as the Holt and Williams and Woodward & Brock machines, which improvement consisted in the automatic start movement in a tacking machine, which drives only one nail, and then stops.    It is said that the only improvement found in his patent in suit which is not contained in his earlier patent is the addition of a jack, which was old and well known, and, further, that Woodward suggests in his earlier patent the use of such jack, in the following language, found in the specification:

"I herein describe my invention as being operated by means of the work held by the operator, or by a jack which is moved by the operator, although, of course, I do not confine myself to this especial manner of operation, as the machine may be started by hand or by foot, or in any other desirable way."

Whatever force there may be in these suggestions, it does not seem to us that Woodward is at liberty to urge them as a defense in a suit upon his own patent against a party who derives title to that patent through him.    It is clearly inequitable for a patentee to sell or assign his patent, and then, in a suit against him for infringement by his assignee, to set up that the patent is void for want of invention.    The assignor of a patentable invention is estopped from denying the validity of the patent, or his own title to the interest transferred.    He cannot practice the invention contrary to the provisions of his assignment; and, when sued for infringement, he is not permitted to set up in his defense the invalidity of the patent, or his own inability to convey it.    2 Rob. Pat. p. 555, § 787; Walk. Pat. § 469; Underwood v. Warren, 21 Fed. 573; Telegraph Co. v. Carey, 22 Blatchf. 34, 19 Fed. 322; Parker v. McKee, 24 Fed. 808; Many v. Jagger, 1 Blatchf. 372, Fed. Cas. No. 9,055; Curran v. Burdsall, 20 Fed. 835; Burdsall v. Curran, 31 Fed. 918; Rumsey v. Buck, 20 Fed. 697.

The two parties, besides Woodward, named as defendants, are James and Thomas Barrett.    It appears by a stipulation in the

record that the two alleged infringing machines were designed by Woodward, and constructed according to his designs, and that they were made, used experimentally, and offered for sale by the defendants Barrett. In the absence of any further evidence, we think this creates such a presumption of privity between the parties that all are estopped from disputing the validity of the patent. Telegraph Co. v. Carey, 22 Blatchf. 34, 19 Fed. 322.

On the question of infringement, we entertain no doubt. In the two machines constructed by Woodward and which the plaintiff says infringe the patent, the driver is continuously in operation, or, in other words, the automatic starting and stopping mechanism controls the tack feed only, while, in the machine covered by the patent, both the tack driver and tack feed are controlled by the automatic starting and stopping mechanism. There are also other differences in constructional details, having special reference to the starting and stopping mechanism. It may be that these alleged infringing machines are an improvement upon the invention covered by the Woodward patent in suit, but they still have all the essential elements of the best form of that invention, and therefore must be held to infringe it.

Decree of the circuit court affirmed.