BOSTON LASTING-MACH. CO. v. WOODWARD et al.

(Circuit Court of Appeals, First Circuit. July 20, 1897.)

No. 191.

1. PATENT INFRINGEMENT SUITS—ESTOPPEL AGAINST ASSIGNOR.

The rule that a patentee who has assigned his patent is estopped to deny its validity does not apply, either as against him or his co-defendants, where the latter are the principal infringers, and he is acting merely as their employé.

2. SAME—CONSTRUCTION OF CLAIMS—LASTING AND TACKING MACHINES.

The Woodward patent, No. 248,544, for a "lasting and fastening machine," fairly construed in view of the patentee's earlier patent for a power tacking machine, covers merely the combination, with an automatic fastening-driving mechanism, of a jack,—either an ordinary jack, or a jack with a special adjustment, and the claims are void for want of invention.

Appeal from the Circuit Court of the United States for the District of Massachusetts.

This was a bill in equity by the Boston Lasting-Machine Company against Erastus Woodward, James Barrett, and Thomas Barrett, for alleged infringement of letters patent No. 248,544, issued October 18, 1881, to the said Erastus Woodward for a "lasting and fastening machine." The complainant was the owner of the machine by assignment. The circuit court held that there was no infringement, and dismissed the bill. 75 Fed. 272. Complainant has appealed.

Frederick P. Fish and William K. Richardson, for appellant.
George O. G. Coale and James E. Maynadier, for appellees.

Before COLT and PUTNAM, Circuit Judges, and WEBB, District Judge.

PUTNAM, Circuit Judge. This patent has previously been before this court, in Woodward v. Machine Co., wherein two opinions were passed down, one March 5, 1894, reported in 8 C. C. A. 622, 60

Fed. 283, and one June 23, 1894, reported in 11 C. C. A. 353, 63 Fed. 609. The questions then disposed of were those of estoppel and infringement.

We are again pressed with the proposition that the respondents below are estopped from denying the validity of the claims of the patent now in issue. The situation in this respect is, however, essentially different from that existing when the patent was previously under consideration. Then the respondents were nominally the same as now, namely, Woodward, who was the patentee and the assignor of the patent, and James Barrett and Thomas Barrett; and in both cases all these respondents were and are, in a general sense, co-operating. The essential difference, however, is that in the prior suit, Woodward, who was the only person directly subject to the rule of estoppel, was the principal, and the other respondents, so far as the evidence showed, were acting at his suggestion, and in subordination to him. Now, so far as the evidence shows, the other respondents are the principals, and Woodward is their employé, and no estoppel applies to them, by reason of their engaging Woodward in a subordinate position. Even though all might be properly regarded as joint tort-feasors, if any wrong has been committed, yet they have no joint interest in the sense of the law, and Woodward, being a mere subordinate, cannot be enjoined; under the circumstances of this case, unless his principals are also subject to injunction. Belknap v. Schild, 161 U. S. 10, 25, 16 Sup. Ct. 443. Under the rules laid down in that case, he cannot be holden to account for profits; so there is no ground of equitable jurisdiction against him severed from the persons who employed him. While a person occupying a subordinate position may be in privity with his principal, in the sense in which that word may properly be used in this connection, the reverse is not ordinarily true. Therefore, in the present suit, the question of the validity of the claims in issue is open for determination.

No claims have been presented for our consideration except the second, third, and fourth, as follows:

"(2) In an organized lasting and tacking machine, the combination of a jack for holding a last and presenting it to automatic fastening-driving mechanism, the said automatic fastening-driving mechanism, and an actuating device for starting the fastening-driving mechanism, constructed substantially as set forth, and adapted to be moved in the act of presenting the work in proper position for receiving the fastening, whereby the fastening may be driven at the instant that the work is so located, all substantially as and for the purposes described.

"(3) In an organized machine for lasting and tacking the uppers of boots and shoes, the combination of a jack for holding and presenting the last to an automatic fastening-driving device, the automatic fastening-driving device, and the means for setting said fastening-driving device in operation, arranged or located to be automatically moved upon the placing in position of the last, whereby a fastening is driven at the instant the last is so located, all substantially as and for the purposes described.

"(4) In an organized machine for lasting and tacking the uppers of boots and shoes, the combination of a jack for holding and presenting the last to an automatic fastening-driving device, the automatic fastening-driving device, and the means for starting and stopping its operation, adapted to be operated or moved automatically upon the placing in proper position of the last or work in relation to the nozzle, whereby, upon the instant said work is so located, a fastening is

driven, and the machine automatically stopped, all substantially as and for the purposes described."

Almost simultaneously with the issue of the patent in suit, and preceding its date only 49 days, Woodward obtained a patent for a machine, described as a "power tacking machine," with "means for starting it, and then stopping it automatically," whereby it was made "impossible to drive more than one tack at a time." The specification also said:

"I herein describe my invention as being operated by means of the work held by the operator, or by a jack which is moved by the operator, although, of course, I do not confine myself to this especial manner of operation, as the machine may be started by hand or by foot, or in any other desirable way."

The specification of the patent in suit describes an adjustable jack, by the aid of which the work can be presented to the tacking mechanism in a suitable manner for coming into proper line at different points of action. The adjusting mechanism of the jack is separately claimed and fully described in claim 9 of the patent in suit, and it is also claimed in combination in others of its claims. The specification of the patent now in suit refers to Woodward's prior patent, and states that the patentee prefers to use the invention for driving fastenings described in it. Nevertheless, the complainant below maintains that, on the true construction of the specification and claims, other automatic fastening-driving mechanisms are covered by the combination in issue. Assuming this to be correct, the claims in issue, fairly interpreted, notwithstanding their verbosity, consist simply in combining, with an automatic fastening-driving mechanism, a jack,—either an ordinary jack, or a jack with a special adjustment. The means of putting the tacking mechanism in motion are described in Woodward's prior patent, already referred to, and constitute an essential element of the machine made under that patent. They cannot be separated from it, and made a third element of the combination in the patent now in suit; so that there are only two substantial elements in the later patent, as already stated. It is too apparent that, for work of the character for which these machines are intended, the mere addition of an ordinary jack in this way involves no invention, and is not patentable. If, however, claims 2, 3, and 4 are to be so construed that the words "a jack" shall intend a jack with an adjustment substantially as explained in the specification, then it is not maintained that they are infringed. But if they are construed to intend any jack with an adjustment, which is the only other hypothesis remaining open to the complainant below, it becomes again plain that the combination was not patentable. The suggestion that "a jack," meaning "any jack," be made an additional feature for any fastening machine used in the art of manufacturing boots or shoes, or, indeed, that an adjustable jack, meaning any adjustable jack, be made such a feature, covers what is too common in this art to involve in itself invention.

The complainant urges on us very strenuously Machine Co. v. Lancaster, 129 U. S. 263, 9 Sup. Ct. 299, maintaining that the combination covered by the claims in issue here should receive a liberal support, as did the invention in the case cited. The device there

was the first automatic one for sewing buttons upon fabrics of the kind to which the machine was adapted, and so the complainant here maintains that its machine was the first one which accomplished the purpose for which it was intended. It is very usual for patentees to assert that Machine Co. v. Lancaster has a very general application. On the other hand, it was exceptional, and the invention in suit there is easily distinguished from the great mass of patented combinations. Its underlying idea was novel. As was said by the supreme court, at page 273, 129 U. S., and page 302, 9 Sup. Ct., the mechanical function performed by the machine covered by the patent was as a whole entirely new. In the present suit, however, the entirely new function is found in the device of Woodward's earlier patent, and the patent now in issue shows nothing except a method of making the new function more useful. In this particular the case is essentially unlike the conditions of the hypothesis stated in U. S. v. Berdan Firearms Co., 156 U. S. 552, 565, 15 Sup. Ct. 420, as it is entirely plain that the device described in the claim in issue would infringe the device in Woodward's prior patent, although an improvement on it. It is true it is now claimed that Woodward's earlier patent related only to a tacking machine, and that the device in issue was the first capable of doing automatically the whole work of lasting, except stretching the upper into position, thus leaving the hands free for that purpose. Yet the specification of the earlier patent stated that the invention was "especially desirable for use in the process of lasting the uppers of boots and shoes, where it is very necessary to drive a tack very quickly, and yet not drive more than one at a time." All this, however, is merely refining upon words, as the fact remains that the only addition to the device of the prior patent was a jack. It would operate very unjustly on the holder of the earlier patent, whoever he may be, to bar him from the right of combining any adjustable jack whatever with the device covered by that patent, when adjustable jacks were already well-known devices in the art, and when there are no special circumstances to overcome the consequent presumption that such a combination involves no patentable invention.

The decree of the circuit court is affirmed, and the costs of this court are adjudged to the appellees.