HWB, INC., a Delaware corporation, and Harold W. Braner, a Florida resident, Plaintiffs-counterdefendants

v.

BRANER, INC., and Repco Metal Machine, Inc., now collectively known as Braner, U.S.A., an Illinois corporation, and Douglas Matsunaga, an Illinois resident, Defendants-counterplaintiffs.

No. 92 C 5900.

United States District Court, N.D. Illinois, Eastern Division.

Nov. 21, 1994.

James R. Sweeney, Carol A. Merritello, Lee, Mann, Smith, McWilliams, Sweeney & Ohlson, Chicago, IL, for HWB, Inc.

Robert W. Gettleman, Steven L. Baron, D'Ancona & Pflaum, Chicago, IL, for Braner, Inc.

Robert W. Gettleman, Jeffrey Hoke Bergman, Steven L. Baron, D'Ancona & Pflaum, Chicago, IL, for Douglas Matsunaga.

Jeffrey Hoke Bergman, D'Ancona & Pflaum, Chicago, IL, for Braner U.S.A., Inc.

### MEMORANDUM OPINION AND ORDER

NORDBERG, District Judge.

Before the Court is Plaintiff HWB, Incorporated's and Plaintiff Harold R. Braner's Motion for Reconsideration. Plaintiffs ask this Court to reconsider its prior determination that the doctrine of assignor estoppel does not preclude Defendant Braner U.S.A., Inc. from challenging the validity of the patents on the turret stacker invented by Lawrence Richards ("Richards"), an employee of Defendant Braner U.S.A., Inc.

■ A motion for reconsideration is proper where the Court has patently misunderstood a party, made a decision outside of the adversarial issues presented to the court by the parties, or made an error not of reasoning but of apprehension. *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir.1990) (citing *Above the Belt Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D.Va.1983)). In its Motion for Reconsideration, Plaintiffs suggest that the Court has made an error of apprehension in holding that the doctrine of assignor estoppel does not apply to bar Braner, U.S.A. from asserting the defense of invalidity with regard to the patents Richards previously assigned to Plaintiffs.

■ The doctrine of assignor estoppel bars one who has assigned the rights to a patent from later contending that what he assigned was a nullity. (August 16 Opinion at 6, 1994 WL 447530) (citing *Diamond Scientific Co. v. Ambico, Inc.*, 6 U.S.P.Q.2d 2028, 2030, 848 F.2d 1220, (Fed.Cir.), *cert. dismissed*, 487 U.S. 1265, 109 S.Ct. 28, 101 L.Ed.2d 978 (1988); *Q.G. Products, Inc. v. Shorty, Inc.*, 992 F.2d 1211, 1212–1213 (Fed. Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 192, 126 L.Ed.2d 150 (1993)). The doctrine of assignor estoppel also extends to those in privity with the assignor. (August 16 Opinion at 16, 1994 WL 447530) (citing *Shamrock Technologies v. Medical Sterilization*, 903 F.2d 789, 793 (Fed.Cir.1990)).

■ According to *Shamrock Technologies*, Privity, like the doctrine of assignor estoppel itself, is determined upon a balance of the equities. If an inventor assigns his invention to his employer Company A and leaves to join Company B, whether Company B is in privity and thus bound by the doctrine will depend on the equities dictated by the relationship between the inventor and Company B in light of the act of infringement. The closer that relationship, the more the equities will favor applying the doctrine to Company B.

In balancing the equities and deciding that Lawrence Richards was not in privity with Braner, U.S.A., the Court relied on two principal cases. *See Shamrock Technologies*, 903 F.2d at 793; *Intel Corporation v. U.S. International Trade Commission*, 946 F.2d 821, 839 (Fed.Cir.1991).

In *Shamrock Technologies*, the court considered a variety of factors in determining that the assignor/inventor was in privity with his new employer: (1) the assignor/inventor was Vice president in charge of Operations at his new employer; (2) the assignor/inventor owned 50,000 shares of stock of his new employer; (3) as soon as the assignor/inventor was hired, the new employer built facilities for performing the infringing activity; (4) the assignor/inventor oversaw the design and construction of those facilities; (5) the assignor/inventor was hired in part to start up the infringing operations; (6) the decision to begin the infringing operation was made jointly by the assignor/inventor and the president of his new employer; and (7) the assignor/inventor was in charge of his new employer's infringing operations. 903 F.2d at 794. Although the *Shamrock Technologies* court noted that no privity exists between a mere employee and a corporation, it held that the assignor/inventor in the instant case was far more than a mere employee given his direct involvement in his employer's infringing operations and the fact that his employer clearly availed itself of the assignor/inventor's "knowledge and assistance" to conduct the infringement. *Id.* citing *Mellor v. Carroll*, 141 F. 992, 944 (C.C.D.Mass.1905).

Applying, the factors set out in *Shamrock Technologies*, this Court found that the equities did not balance in favor of holding that Braner, U.S.A. was in privity with Richards. The Court noted that Richards' current position as Vice President of Sales at Braner,

U.S.A. clearly made him an officer, but this fact, in and of itself, did not warrant a finding that Richards was in privity with Braner, U.S.A. (August 16 Opinion at 18.) The Court noted further that, "[u]nlike *Shamrock Technologies,* Richards was not hired by Braner U.S.A., Inc. to start up the alleged infringing operations or to oversee the construction of the facilities necessary to perform the infringing operations ..." *Id.* at 18–19.

In addition to *Shamrock Technologies,* the Court relied on *Intel Corporation,* 946 F.2d at 839, in holding that the equities did not balance in favor of finding that Braner, U.S.A. was in privity with Richards. The *Intel Corporation* court held that privity existed between the defendant company and the assignor/inventor where the corporation, of which the assignor/inventor was a major shareholder and chief executive officer, directly transferred technology to the defendant company. *Id.* at 838–839. This technology, which produced the infringing product, would be used in a joint development program between the corporation and the defendant company. *Id.* The *Intel Corporation* court also found significant the assignor/inventor's continuous involvement in the joint development program, the assignor/inventor's indemnification of the defendant company against patent infringement suits and the corporation's complete dependence on the defendant company for the financing of the joint development program. *Id.* at 838–839.

Finally, the *Intel Corporation* court noted that, even though the defendant company did not take part in the joint development program in order to avail itself of the infringing technology, the absence of an illicit purpose did not preclude a finding that privity existed between the defendant company and the assignor/inventor. *Id.* at 839. Relying on *Shamrock Technologies,* the court in *Intel Corporation* determined that, for a finding of privity, what is significant is whether the ultimate infringer availed itself of the inventor's knowledge and assistance to conduct infringement. *Id.* (citing *Shamrock Technol-*

ogies, 903 F.2d at 794 (citing *Mellor,* 141 F. at 994)). In contrast to *Intel Corporation,* this Court found that, "Braner, U.S.A., Inc. did not avail itself of Richards' knowledge and assistance in order to conduct the infringement. Rather, [Douglas] Matsunaga, through Repco Metal Center Machine, Inc., simply purchased the majority of the assets owned by H.R. Braner Engineering, Inc., including the manufacturing and production facilities, and continued to manufacture the products which H.R. Braner Engineering, Inc. had previously manufactured." (August 16 Opinion at 19.)

In support of their Motion for Reconsideration, Plaintiffs argue that this Court erred in determining that Braner, U.S.A. did not avail itself of Richards' knowledge and assistance in order to conduct the infringement. Plaintiffs note that the United States Patent Statute lists three alternative means by which a person can infringe a patent: making, using or selling a patented invention without authority. 35 U.S.C. § 271(a). Plaintiffs state further that, as Vice President of Sales for Braner, U.S.A., Richards obviously sold turret stackers and Braner, U.S.A. clearly availed itself of Richards' knowledge and assistance in order to conduct the infringement—namely, the sale of a patented invention (the turret stacker) without authority. Consequently, Plaintiffs charge that this Court erroneously limited its analysis to whether Braner, U.S.A. availed itself of Richards' knowledge and assistance in order to manufacture the allegedly infringing product and failed to consider the knowledge and assistance Richards provided to Braner, U.S.A. in order to sell the allegedly infringing product.

For the following reasons, Plaintiffs' argument and its Motion for Reconsideration must be rejected.[1] In deciding that the defendant company clearly availed itself of the assignor/infringer's knowledge and assistance in order to conduct the infringement, both *Shamrock Technologies* and *Intel Corporation* cited *Mellor v. Carroll,* 141 F. 992, 994

---

**1.** As Harold Braner's statements in his affidavit are irrelevant to the issue of whether privity exists between Richards and Braner, U.S.A., the Court has not considered it in arriving at its decision, and thus denies Plaintiffs' motion for leave to file additional evidence.

(C.C.D.Mass.1905). Significantly, in *Mellor*, the court stated,

> Mere co-operation in the alleged infringement with the estopped assignor may not, as suggested in *Continental Co. v. Pendergast*, (C.C.) 126 Fed. 381, 384 be enough to create the estoppel. If the estopped assignor enters into business others, who derive from him their knowledge of the patented process or machine availing themselves of this knowledge and assistance, enter with him upon a manufacture infringing the patent which he has assigned, they are bound by his estoppel.

*Id.* The language in *Mellor* clearly indicates that the relevant knowledge and assistance of which the defendant company avails itself is the knowledge and assistance associated with the manufacture of the infringing product.

The fact that the unauthorized sale of a patented invention infringes a patent, *see* 35 U.S.C. § 271(a), does not mean that an employer who employs the assignor/inventor to sell, allegedly without authority, the patented invention is in privity with the assignor/inventor for purposes of the doctrine of assignor estoppel. Premised on notions of unfairness and injustice, the doctrine of assignor estoppel prohibits an assignor from assigning his patent rights for value and later asserting that what it assigned was worthless, all to the detriment of the assignee. *See, Diamond Scientific Co. v. Ambico, Inc.*, 848 F.2d 1220, 1224 (Fed.Cir.1988). For the doctrine of assignor estoppel to bar a company who later employs the assignor, the assignor must play a clear and direct role in the company's infringing operations. *See Shamrock Technologies*, 903 F.2d at 794. Every employee provides some knowledge or assistance to his employer. Those who do not are terminated. Thus, for purposes of privity, the relevant question is whether the assignor/inventor plays such a significant part in his new employer's infringing operations that his new employer could not have initiated the infringing operations without the assistance of the assignor/inventor. In the absence of such a relationship, the equi-

ties do not balance in favor of applying the doctrine of assignor estoppel and preventing the new employer from asserting the defense of invalidity in response to a patent infringement suit.

Upon consideration of the undisputed facts, this Court determined that it could not conclude that the relationship between Richards and Braner, U.S.A. was such that Braner, U.S.A. could not have initiated the infringing operations without the assistance of Richards. It is undisputed that Douglas Matsunaga, through Repco Metal Center Machine, Inc. (now Braner, U.S.A.), purchased the majority of assets owned by Plaintiffs, including the manufacturing and production facilities, and continued to manufacture the products which Plaintiffs had previously manufactured. (*See* Defendants' Rule 12(n) Response to Plaintiffs' Rule 12(M) Statement of Facts at ¶¶ 16, 17, 18.) Significantly, Richards was not hired by Braner, U.S.A. to initiate the alleged infringing operations, to oversee the construction of facilities necessary to perform the infringing operations and Braner, U.S.A. did not avail itself of Richards' knowledge and assistance in order to manufacture the infringing product.

In its prior opinion, this Court did consider Richards' position as Vice President of Sales with Braner, U.S.A., but in light of the factors relied on in *Shamrock Technologies* and *Intel Corporation*, the Court determined that Richards' status as an officer in and of itself did not demand a finding of privity between Braner, U.S.A. and Richards. (August 16 Opinion at 18.) The parties agree that Richards was knowledgeable about Braner, U.S.A.'s products and that he was an asset to Braner, U.S.A. (*See* Defendants' Rule 12(n) Response to Plaintiffs' Rule 12(M) Statement of Facts at ¶¶ 22, 23.) However, the knowledge and assistance he provided Braner, U.S.A. in his position as Vice President of Sales does not tip the balance in favor of a finding that the doctrine of assignor estoppel should bar Braner, U.S.A., from asserting the defense of invalidity.[2]

---

**2.** Additionally, the Court notes that it is uncontested that both Douglas Matsunaga, the sole owner and President of Braner, U.S.A., and Richards handled customer sales for H.R. Braner Engineering, Inc. when they worked for Plaintiff Harold Braner. (*See* Defendants' Rule 12(n) Response to Plaintiffs' Rule 12(M) Statement of Facts at ¶ 21.)

The fact that the unauthorized sale of a patented invention infringes a patent and that Richards, as Vice President of Sales for Braner, U.S.A., sold, allegedly without authority, the patented product might mean that Richards and Braner, U.S.A. are liable for patent infringement. However, it does not mean that Braner, U.S.A. is in privity with Richards, and thus should be prevented from asserting the defense of invalidity with regard to the patents Richards assigned to Plaintiffs.

For the foregoing reasons, Plaintiff's Motion for Reconsideration is denied.